# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDALL R. BINVERSIE, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DOMINICK DONOFRIO, et al. | : | NO. 16-5635 |

## MEMORANDUM

**DITTER, J.**                                                          October 20, 2017

This matter is now before me on Plaintiffs' petition for punitive damages. The question is whether they should be awarded and if so, how much. I will explain in this memo my answers.

First, a brief review of the facts.

For the sake of simplicity, I shall refer to the plaintiffs simply as Binversie and the defendants as Donofrio. And I will summarize rather than particularize. Starting in late January of 2013, Binversie and Donofrio entered into a written agreement under the terms of which Donofrio's company, Windstar, would act as Binversie's agent in the search for a business investment. Over the next sixteen months, Binversie paid Donofrio $570,400 in consulting fees. In early 2014, Donofrio told Binversie that a Philadelphia retail oil business, the Tioga Fuel Company and its related holdings, could be purchased for $1,850,567.

This was a lie - the actual price was $750,567.

Donofrio told Binversie that to avoid the need to pay a broker's commission, he would have his company, Windstar, make the purchase from the Tioga owners. Windstar would then convey the Tioga holdings to Binversie. Actually, Donofrio's purpose was not to avoid a broker's commission but to conceal from Binversie the amount paid to the

Tioga owners. It worked. Windstar paid $750,567 and then turned around and sold to Binversie for $2,050,567, a secret markup of $1,300,000. As part of his payment to Windstar, Binversie executed a mortgage for $1,250,000. Although this mortgage has been cancelled, Binversie paid Windstar $136,262 prior to the cancellation.

Throughout the time of the negotiations with the Tioga owners, Binversie paid Donofrio $246,850 to act as his agent and in his best interest. Binversie also paid Donofrio's attorney $39,287 for services relating to the Tioga transaction. In addition, while Donofrio controlled Tioga's bank account, he paid himself $87,625.

In summary, while purporting to act as Binversie's agent, Donofrio purchased a business and then resold it to Binversie having made a secret markup of more than a million dollars.

During their relationship, Binversie paid Donofrio consulting, agency, and attorney's fees, totaling $1,042,399, and Donofrio took $87,625 from Tioga.

Binversie brought suit against Donofrio. Although Donofrio had ample notice of the suit and ample time to respond, there was no defense and eventually default judgment was entered against Donofrio voiding the $1,250,000 promissory note, security agreement and mortgage from Tioga Fuel Company to Windstar Financial Services. Donofrio has not responded to the Court in spite of being copied on the order of default judgment as well as briefing and oral argument on the issue of punitive damages. With those facts in mind, I make the following findings:

1. First and foremost there was fraud, evil as Eve's apple and as neatly hidden and accomplished as Houdini's best. Well-planned, well-executed, and deliberate, it involved large sums of money, before, after, and during the main event.

2. Donofrio was Binversie's agent and therefore owed Binversie the highest duty of care and loyalty. As Binversie's agent, Donofrio was obligated to put Binversie's interests above his own.

3. The fact that Donofrio was Binversie's fiduciary makes Donofrio's multi-frauds that much more egregious.

4. Although I do not know what Donofrio did during the period from late January 2013 to May 2014 in seeking an investment opportunity for Binversie, I do know that Donofrio made no suitable finding and for his unsuccessful effort was paid $570,400, an average of more than $35,000 a month,

5. Although I do not know what was involved in the negotiations with Tioga, I do know that Binversie paid Donofrio $246,450 for his efforts and an additional $39,287 to Donofrio for his attorney's services in connection with the Tioga acquisition.

6. Although I do not know what Donofrio purportedly did for Binversie while Donofrio controlled Tioga's bank account, I do know that Donofrio paid himself $87,625 from that account.

7. Quite apart from the law's requirements of a fiduciary and whether he knew of them or not, Binversie could have justifiably relied on Donofrio to provide loyal service by reason of these payments alone. Instead he got fraud and an overcharge of $1,300,000.

8. I know nothing about Donofrio's assets, resources, holdings, or obligations, financial or otherwise.

9. An award requiring Donofrio to pay punitive damages is appropriate. Punitive damages are designed to punish and deter. As previously stated, Donofrio's conduct was intentional, unlawful, evil, outrageous, and egregious.

10. I conclude that Donofrio should return to Binversie, the following payments made by Binversie to Donofrio while Donofrio was acting as Binversie's agent and am ordering that he shall do so:

| | |
|---|---|
| For difference between purported price and real price | $50,000 |
| (After cancellation of $1,250,000 note) | |
| For consulting fees paid from January 2013 to May 2014 | $570,400 |
| For consulting fees paid for negotiations with Tioga | $246,450 |
| For attorney's fees | $39,287 |
| For mortgage payments on now cancelled note | $136,262 |
| For payments to Donofrio from the Tioga bank account | $87,625 |
| | $1,130,024 |

11. In addition, I conclude that in view of Donofrio's unlawful, evil, deliberate, and outrageous conduct, Donofrio should pay to Binversie the additional sum of $2,500,000 as punitive damages and am ordering that he shall do so.

12. In reaching these conclusions, I have kept in mind the provisions of the default judgment and its consequences.

An appropriate order follows.